IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESLIE R. R..,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-753-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff protectively applied for DIB and SSI on September 28, 2018, claiming an onset date of September 11, 2015 (Tr. 13, 211). She appeared for an evidentiary hearing with ALJ Lisa Leslie on February 13, 2020 (Tr. 32). ALJ Leslie denied Plaintiff's application on April 21, 2020 (Tr. 26). The Appeals Council denied Plaintiff's request for review (Tr. 1). Plaintiff filed a timely Complaint in this Court on August 3, 2020 (Doc. 1).

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 10).

**Issue Raised by Plaintiff**

Plaintiff raises only one issue for the Court to consider: whether the ALJ improperly determined Plaintiff's residual functional capacity by failing to include that she "must elevate her left leg above waist level during the course of the workday to alleviate chronic swelling" (Doc. 28, p. 4).

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.   Between steps three and four, the ALJ  assesses the claimant's residual functional capacity ("RFC"), which is the claimant's "ability to work despite her health problems." *Reynolds v. Kijakazi*, 25 F. 4th 470, 473 (7th Cir. 2022); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).   The ALJ "need only include

---

[3]  The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

limitations [in the RFC] that are supported by the medical record." *Reynolds,* 25 F. 4th at 473 (internal citations omitted).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. 20 C.F.R. § 404.1520. A negative answer at any step other than step 3 precludes a finding of disability. (*Id.*). The plaintiff bears the burden of proof at steps 1–4. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See id.*

Importantly, this Court's scope of review is limited. 42 U.S.C. § 405(g) ("the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (internal citations omitted). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citation omitted). However, this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Leslie followed the five-step analytical framework described above. She determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 11, 2015 (Tr. 15). She found that Plaintiff has the following severe impairments: coronary artery disease ("CAD") and peripheral artery disease ("PAD"), status post left femoral embolectomy with four compartment fasciotomy[4] (Tr. 16). However, she found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" (Tr. 18.).

ALJ Leslie determined that Plaintiff has the residual functional capacity to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416 .967(a) except that she cannot climb ladders, ropes or scaffolds, and can only occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights, around moving mechanical parts or other such hazards. She can have no concentrated exposure to extreme heat, cold, humidity, wetness, dust, fumes or other pulmonary irritants.

(Tr. 18).

ALJ Leslie found that Plaintiff was unable to perform any past relevant work (Tr. 24). However, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy" that she can perform (*Id*.). Therefore, Plaintiff was not disabled (Tr. 25).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order.

---

[4] An embolectomy is the surgical removal of a blood clot from the blood vessel. https://www.saintlukeskc.org/health-library/understanding-embolectomy. (last accessed March 22, 2022). A fasciotomy is a surgical procedure performed "when there is swelling and increased pressure in a small space, or compartment, in the body." https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/overview-of-hand-surgery (last accessed March 22, 2022).

The following summary of the record is tailored to Plaintiff's argument that she has to elevate her left leg during the course of the workday to alleviate chronic swelling.

    **1.**    **Agency forms**

Plaintiff completed a Function Report on October 29, 2018 (Tr. 260, 267). She explained that she could not "stand long because the swelling of my leg" and "all those hours" on an operating table caused her to be unable to sit in a metal chair "because of my back" (Tr. 260). She wrote that she could not do house or yard work because her "legs swell up", that her condition affects her ability to sit, and her "leg swells when walking" (Tr. 263, 265). She further noted that "[I] always have swelling on my leg" (Tr. 267). In the "Physical Impairments Questionnaire", she wrote "if I sit for two hours I have to move my left leg back and forward so I won't catch a blood clot. Short period of time sitting" (Tr. 270). She completed a "Work Background" report in October 2019 in which she stated "can't sit so long and can't stand long because the swelling in my leg" (Tr. 304).

    **2.**    **Evidentiary Hearing**

Plaintiff was 46 years old on the date of the hearing. She testified that when she was working, she performed "warehouse work" (packing boxes and shipping them) for Roman Jewelry (Tr. 39). She also performed janitorial work and took care of an infant (Tr. 40, 44).

In 2015, Plaintiff underwent valve replacement surgery (Tr. 47). The new valve started leaking, so in 2016 she underwent the same surgery (*Id.*). She continues to have ongoing cardiac issues (*Id.*). She testified that she had a blood clot in her left leg that was removed, but her leg continues to swell when she stands or sits and she has to elevate it (Tr. 49). During the hearing, she was moving her left leg and extending it "to help keep the swelling from getting too bad" (Tr.

50).  When she is in a seated position, her leg starts to swell after 20 minutes (*Id*.)  When she is standing, her leg starts to swell after 10-15 minutes, sometimes less (Tr. 50-51).  The swelling is "real big" (Tr. 51).  She takes a "water pill" for the swelling (*Id*.). She has to go the bathroom "every 3, 4 minutes" (Tr. 52).  She cannot do a household chore for more than an hour before she has to elevate her leg (Tr. 53).

> ….an individual of the claimant's age and education [and past work]….no climbing of ladders, ropes or scaffolds; occasional ramps and stairs; occasional stooping, kneeling, crouching, and crawling; no work at unprotected heights, around moving mechanical parts, or other such hazards; and no concentrated exposure to extreme heat, cold, humidity, wetness, dust, fumes, or other pulmonary irritants. Would that individual be able to perform [Plaintiff's] past work?

ALJ Leslie asked vocational expert Susan Shea to consider the following hypothetical:

(Tr. 55).  The vocational expert responded "no she would not" (*Id*.).  However, the vocational expert testified that Plaintiff could perform the following sedentary positions: sedentary hand assembler, sedentary machine tender, sedentary table worker (Tr. 56).  ALJ Leslie then asked the vocational expert "[i]f the individual needed to be able to elevate their feet at waist level or above for 30 minutes out of every hour, would that---the addition of that requirement eliminate work, or would there be work available for somebody who needed to do that?" (Tr. 57).  The vocational expert responded  "[n]o. That would eliminate—I mean, that would represent a modification of work, and so there would be no work as typically performed" (*Id*.)  The vocational expert further testified that there would be no work for an individual who was off-task for 20% of the work day or absent two or more days per month (Tr. 57).

3.   **Relevant Medical Records**

Plaintiff underwent an emergency embolectomy on September 14, 2015 and mitral valve

replacement surgery on September 16, 2015 (Tr. 310). She returned to the vascular surgeon for a follow-up visit on October 14, 2015 and he noted that the "function of the left leg has completely returned" (Tr. 511). She saw her cardiologist, Dr. James McPike, on October 20, 2015 (Tr. 310). He noted she was on Lasix, 40 milligrams daily, but her edema had resolved and he reduced the dosage to 20 milligrams (*Id.*). She continued seeing Dr. McPike at 6-month intervals. Throughout 2016 and 2017, he noted no edema in her legs and made no notations that indicated Plaintiff complained of swelling in her left leg (Tr. 348, 350, 352, 354, 356, 358). On one visit, however, he noted "no worsening pedal edema" (Tr. 354). On February 7, 2018 Dr. McPike noted that she "complains of pedal edema if does not take her Lasix" (Tr. 346).

Plaintiff saw Advanced Practice Nurse Gerthy Pierre on July 30, 2018. APN Pierre noted that Plaintiff's "left lower leg has been swelling daily after being 'on it all day' with the swelling 'comes the pain in the leg too'" (Tr. 402). APN Pierre further noted that Plaintiff had "+1 edema on her left leg" and Plaintiff had an appointment with her cardiologist on August 8, 2019 "to address left leg pain related to previous [DVT]" (Tr. 405). Plaintiff saw Dr. McPike on August 8, 2018 and she had no swelling in her legs (Tr. 344). He noted that she complained of lower back pain and "swelling in her feet at the end of the day" (*Id.*).

Plaintiff returned to see APN Pierre on September 7, 2018 (Tr. 410). Plaintiff reported "leg 'swelling with walking'" (*Id.*). APN Pierre ordered "stocking to help decrease leg edema" (*Id.*). On October 30, 2018, Plaintiff reported to APN Pierre that she experienced swelling in her left leg "every time she walks" and she "keeps it propped up day, evening, and night" (Tr. 440). Plaintiff returned to see APN Pierre on November 14, 2018 for "weight management" (Tr. 444). On that date, her left leg measured 24 inches and her right leg measured 21 inches (Tr. 445).

Plaintiff returned to her cardiologist, Dr. McPike, on February 19, 2019. He noted no edema in her legs and that she had "no new complaints" (Tr. 452).

Plaintiff established care with Dr. Harvey Serota on February 20, 2019. Dr. Serota noted that Plaintiff reported "chest pain at rest, chest pain with exercise, and leg swelling" (Tr. 463). Her pedal pulses were normal (Tr. 464).

### 4. Medical Opinions

**Dr. Vittal Chapa**

Dr. Chapa, an internist, performed a consultative exam on December 13, 2018 (Tr. 423). He noted that Plaintiff "had a blood clot in the left leg. She had surgery for the blood clot. She cannot stand for long periods of time because her leg starts swelling. She has to wear special stockings to keep the swelling down. The stocking irritates her skin" (*Id.*). Upon examining her legs, he noted "edema of the left leg. The left mid-calf measures 3 cm more in circumference compared to the right side. Left pedal pulses were not palpable. Right dorsalis pedis was 3+ (Tr. 424). Dr. Chapa's diagnostic impressions were 1) PAD with claudication, left leg[5]; 2) CAD; 3) hypertension (Tr. 425).

**Dr. Frank Mikell and Dr. Ranga Reddy (state agency physicians)**

Dr. Mikell, a cardiologist, performed a medical evaluation in January 2019 (Doc. 28, p. 5; Tr. 88). He determined that because of Plaintiff's history of left leg embolism and "thrombectomy and fasciotomy in 2015 with chronic [left leg] swelling and pain which will not get better a light reduced to sedentary [RFC] is prudent" (Tr. 87). Dr. Ranga Reddy made the same determination on May 23, 2019. Both doctors noted that she had "left leg edema and pulses

---

[5] Claudication is "pain caused by too little blood flow to muscles during exercise." https://www.mayoclinic.org/diseases-conditions/claudication/symptoms-causes/syc-20370952 (last accessed Mar. 23, 2022).

not palpable" (Tr. 87, 125).

## Analysis

The vocational expert testified that if Plaintiff had to elevate her leg for thirty minutes of every hour, there would be no work as typically performed for her. The vocational expert also testified that if Plaintiff is off-task for 20% of the day, there are no jobs that exist for her. Therefore, Plaintiff contends, the ALJ erred in finding Plaintiff can perform sedentary work because Plaintiff testified that she must elevate her left leg throughout the day.

Plaintiff's testimony regarding the swelling in her left leg that results from sitting does not sufficiently establish that she must elevate her left leg throughout the day. 42 U.S.C. 423(d)(5)(A); 20 C.F.R. 404.1529(a). In evaluating Plaintiff's testimony regarding the swelling in her legs, the ALJ rightfully considered the following: 1) objective medical evidence; 2) the information provided by Plaintiff's medical sources; 3) and observations by the Commissioner's employees. The ALJ is not required to "address every piece of evidence in the record…but may not ignore an entire line of evidence contrary to her finding." *Reinaas v. Saul*, 953 f.3d 461, 467 (7th Cir. 2020).

ALJ Leslie did not ignore Plaintiff's testimony regarding the swelling in her left leg (Tr. 19). In addition to acknowledging Plaintiff's testimony, she also acknowledged that Plaintiff's physicians did, on certain occasions over a four-year period, observe that Plaintiff's left leg was swollen and/or note that Plaintiff complained of left leg swelling and that she had to elevate her left leg. However, ALJ Leslie also noted where Plaintiff's medical providers recorded statements that indicate Plaintiff's swelling in her left leg did not occur as often or as severely as Plaintiff testified. While Plaintiff testified that her left leg starts to swell after she has been sitting for twenty minutes, ALJ Leslie noted instances in Plaintiff's medical records where she reported that

her leg(s) swell(s) after she had been "on her feet" all day, or where she had no swelling at all (Tr. 20, 21). Notably, none of the records reflect that Plaintiff informed her physicians (or Defendants' physicians) that her left leg started to swell after sitting for 20 minutes.

ALJ Leslie was in the best position to evaluate Plaintiff's credibility and this Court will not overrule her evaluation unless it was "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2021). Plaintiff takes issue with ALJ Leslie's finding that Plaintiff's statements regarding the "intensity, persistence, and limiting effects of her symptoms" were "not entirely consistent" with the medical evidence and other evidence of record; Plaintiff argues that this remark is "meaningless boilerplate." However, ALJ Leslie elaborated on her statement by pointing out the specific inconsistencies in the record (Tr. 20, 21), building the "adequate logical bridge" between the evidence and findings. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Given the elaboration, ALJ Leslie's use of the phrase "not entirely consistent" is simply a "polite way to say the evidence did not support all her claims." *Id*. ALJ Leslie's findings are supported by evidence that "a reasonable mind might accept as adequate." *Reynolds*, 25 F.4th at 473. Therefore, the Court affirms the decision of the Commissioner.

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 24, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**